**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| JACQUELINE K. PIETERSE, *et al.*, | : | |
| | : | Case No. 20-17425-MCR |
| Plaintiffs, | : | (Chapter 11) |
| | : | |
| v. | : | |
| | : | |
| GORDON & SIMMONS, LCC, *et al.,* | : | Adversary No.: 21-00233 |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION TO DISMISS</u>**

**Preliminary Statement**

This is a legal malpractice case. Plaintiffs hired the defendant lawyers and law firm to represent them in a lawsuit filed by one of the Plaintiffs' former business partners, alleging that one of the Plaintiffs breached their employment contract and that both Plaintiffs interfered with ongoing business contracts. Plaintiffs allege that their former attorneys committed legal malpractice by refusing to pursue three (3) legal strategies: (1) to threaten criminal prosecution during settlement negotiations, (2) that the employment contract was illegal and therefore void *ab initio,* and (3) that the Plaintiff's former business partners should be precluded from bringing a Trademark Infringement claim on a trademark they did not own. To prevail on their current claims, Plaintiffs must prove that *but for* their lawyers' negligence, they would have prevailed, or received a better outcome in the underlying case. They cannot do so. Plaintiffs argued via a counterclaim that Plaintiff's former business partners breached the valid employment contract and actually owed Plaintiffs further compensation. Had Defendants pursued a theory of contract illegality it would be in direct contradiction of another theory it placed before the court and inconsistent with the facts of the case. Moreover, under Maryland law a trade name can be protected by a business even

if it is not registered. Notwithstanding the absence of negligence, Plaintiffs' Complaint is governed by a forum selection clause requiring any such claims to be brought in Frederick County, Maryland. Therefore, this case should be dismissed on multiple grounds.

**FACTUAL BACKGROUND**

This Court is familiar with the factual background of this case as this is the second adversary proceeding brought by Plaintiffs regarding litigation in the Circuit Court for Frederick County styled *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al.*, Case Number 10-C-17-000401 ("State Court Action").[1] Notably, this Court previously outlined eight pages of detailed Factual and Procedural Background in its May 28, 2021 Memorandum Opinion Regarding Order Abstaining from Exercising Jurisdiction. Therefore, in the interest of judicial efficiency, Defendants provide a factual background specific to the relationship between Plaintiffs and Defendants during the pendency of the State Court Action.

In March of 2017, Defendants Shawn P. Cavenee, Jacob I. Weddle, Charles E. Remus, II, and Benjamin J. Andres all worked as attorneys at Defendant Gordon & Simmons, LLC.[2] On or about March 1, 2017, Plaintiffs retained Defendants to represent them individually as well their businesses, HMRP, Inc. and TD HealthMed Realty Partners – Robinwood, LLC, in the State Court Action brought by Tyler, Donegan, Duncan Real Estate Services, Inc. and TD HealthMed Realty Partners, LLC (collectively, "TDD"). Compl. at ¶ 10. Subsequently, on or about March 3, 2017, Plaintiffs executed a Retainer Agreement with Defendants and tendered a $10,000 retainer fee. *Id.*; Pls' Ex. A.

Shortly thereafter Defendants engaged in discovery and ultimately filed a five count

---

[1] *Pieterse v. Tyler Donegan Duncan Real Estate Services, Inc., et al.* (*In re Pieterse*), 20 B.R. 17425 (Bankr. D. MD. 2021).
[2] All attorney Defendants are still employed at Gordon & Simmons, LLC with the exception of Mr. Andres who now is employed as an attorney at Whiteford Taylor Preston LLP.

Counatercomplaint against TDD on April 19, 2017.[3] Defendants filed an Amended Counatercomplaint on August 10, 2017, and a Second Amended Counatercomplaint on December 8, 2017 ultimately added three more counts, including breach of contract. On or about December 1, 2017, Mr. Cavenee deposed TDD's founder and president, Chadley S. Tyler. Compl. at ¶ 17. Mr. Tyler testified during that Jeffrey Cahall began his business relationship with TDD in 2009 when TDD engaged in commercial real estate and leasing brokerage. *Id.* Further, Mr. Tyler testified that while Mr. Cahall had no brokerage license, his employment responsibilities included seeking out business for TDD. *Id.* On December 14, 2017, as a result of this deposition testimony from Mr. Tyler, Mr. Cahall requested that Defendants pursue settlement negotiations with TDD while using the criminal illegality of Mr. Cahall operating without a brokerage license as leverage. Compl. at ¶ 18.

On December 19, 2017, Mr. Cavenee responded to Mr. Cahall that after consultation with the other attorney Defendants and the Maryland Rules of Professional Conduct that he would not engage in any settlement discussions with TDD that would incorporate a threat of criminal prosecution. He stated that in his opinion as an officer of the court that doing so would be unethical. Compl. at ¶ 19. At this point, Mr. Cahall begrudgingly accepted this position and agreed to proceed forward with Defendants' representation. *Id.* However, just a few months later on March 26, 2018, Mr. Cahall raised the issue again with Mr. Cavenee pressing that he use the threat of criminal prosecution against TDD in their settlement negotiations. Compl. at ¶ 22. On the same day, Mr. Cavenee responded via email that he refused to pursue such a theory in negotiations as it would violate the Maryland Rules of Professional Conduct and was unethical. Compl. at ¶ 23.

On April 15, 2018, TDD amended its initial February 14, 2017 Complaint and added a

---

[3] The Court may take judicial notice of public filings. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

3

claim of trademark infringement of the trade name "HealthMed Realty Partners."  On April 25, 2017, in response to TDD's new trademark infringement count, Mr. Cahall contacted Mr. Cavenee outlining his knowledge of the history of the trade name at issue, which included an assertion that TDD did not own the trade name. On April 23, 2017, Mr. Cahall contacted Mr. Cavenee again regarding the registration of the trade name "HealthMed Realty Partners" and requesting that Defendants seek to dismiss the trademark infringement count based upon TDD's lack of ownership of the trade name. Compl. at ¶ 35. On April 26, 2018, Mr. Cavenee replied to Mr. Cahall's request to dismiss the trademark infringement claim by explaining his experience in trademark infringement litigation and correctly stating that TDD had a common law claim to protect the trade name "HealthMed Realty Partners" despite their lack of ownership. Compl. at ¶ 37.

On May 7, 2018, Mr. Cahall raised the request to include threats of criminal prosecution in settlement discussions a third time. Compl. at ¶ 26. On May 9, 2018, Mr. Cavenee stated definitively for a third time that he refused to engage in any extortion during the settlement negotiations with TDD. Compl. at ¶ 27. This time Mr. Cavenee expressly requested that he wanted to be excluded from any communications between Mr. Tyler and Mr. Cahall incorporating this strategy to ensure that neither TDD nor their counsel believed the Defendants were involved in making such an offer. *Id.* Nonetheless, almost two weeks later on May 21, 2018 Mr. Cahall sent Mr. Cavenee a proposed settlement offer he personally drafted that included language requesting the parties agree to a non-disclosure agreement surrounding what Mr. Cahall characterized as TDD's criminal misconduct. Compl. at ¶ 30. On the same day, for a fourth time, Mr. Cavenee underscored that he would not relay the drafted settlement offer to TDD as it violated the Maryland Rules of Professional Conduct and he considered it to be unethical.  Compl. at ¶ 31.

Judge Theresa M Adams held a bench trial over 12 nonconsecutive days from March 11, 2019 to April 17, 2019. On July 9, 2019, Judge Adams entered judgment in the amount of

4

$442,785.67 in favor of TDD and against Mr. Cahall for breach of contract (Count I), against Ms. Pieterse and Mr. Cahall for interference with contracts (Count II), against Mr. Cahall for conversion (Count IV) and against Pieterse and Mr. Cahall for civil conspiracy (Count V). Compl. at ¶ 50; *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al*., Case Number 10-C-17-000401, Opinion and Order (July 9, 2019). Judge Adams specifically found that there was a valid and enforceable implied employment contract between TDD and Mr. Cahall and that Mr. Cahall breached that contract. Further, as to TDD's trademark infringement claim, Judge Adams found that even though TDD did not own the trade name "HealthMed Realty Partners" that under common law they were entitled to protect it. *Id.* at 20-21. Further, she enjoined the Plaintiffs from using the names "HMRP, Inc." or "TD HealthMed Realty Partners – Robinwood, LLC" and ordered the Plaintiffs to cancel their registration of those names with the Maryland Department of Assessments and Taxation. *Id.* at 21.

 After the issuance of the judgment Plaintiffs came to the Gordon & Simmons offices to meet with the attorney Defendants and discuss any post-judgment options as well as the outstanding balance owed by Plaintiffs to Defendants. Compl. at ¶ 54. Specifically, Plaintiffs requested that the Defendants draft a post-judgment motion requesting that Defendants contest Judge Adams' Judgment on various grounds, including another request to assert the theory that the employment contract between TDD and Mr. Cahall was illegal. Compl. at ¶ 56. Defendants reminded Plaintiffs that they could not proceed to complete more work on the State Court Action without complete payment. Ultimately, after protracted discussions between Plaintiffs and Defendants, Plaintiffs conceded to make a good faith payment towards their outstanding balance and Defendants conceded to incorporate the illegal contract theory to some extent in a Motion to Amend the Judgment. Compl. at ¶ 55, 59. Defendants filed a Motion to Alter or Amend Judge Adams' Judgment on July 19, 2019. As Mr. Cavenee had just argued to Judge Adams at trial that

the employment contract was valid and his client was owed damages as a result of its breach, the Motion to Amend severely curtailed Mr. Cahall's nuclear assertion that all TDD's claims were invalid because of the illegal contract.

In response to the Motion to Amend filed by Defendants, Judge Adams set a hearing for October 15, 2019. In preparation for this hearing on its Motion to Amend, Defendants discussed their strategy for oral argument with Plaintiffs. Eventually, in the weeks before the October 15, 2019 hearing, Mr. Cahall insisted that Mr. Cavenee argue beyond the scope of the arguments contained in their Motion to Amend and advance his long-held theory that all TDD's claims were invalid because the contract was illegal. Mr. Cavenee and Mr. Cahall continued to disagree on the scope of the arguments Mr. Cavenee would advance at the post-judgment hearing. Ultimately, this eroded the attorney-client relationship between Plaintiffs and Defendants to the point where Defendants filed a motion to withdraw as counsel on September 11, 2019, which Judge Adams denied on October 9, 2019. On October 15, 2019, Mr. Cavenee and counsel for TDD appeared before Judge Adams where Mr. Cavenee renewed Defendants' request to withdraw as counsel for Plaintiffs. Mr. Cavenee represented to Judge Adams as much as possible the extension of the dissolution of the attorney-client relationship without violating attorney-client privilege. Counsel for TDD also corroborated the strained relationship he witnessed through communications sent by Mr. Cahall to TDD's counsel copying Defendants and including privileged communications. As a result, Judge Adams granted Defendants' renewed motion to withdraw and reset the parties' hearing on the Defendants' Motion to Amend for January 30, 2020.

Mr. Cahall appeared at the January 30, 2020 hearing *pro se* and argued Mr. Cavenee's Motion to Amend on behalf of Plaintiffs.[4] Compl. at ¶ 62. Unsurprisingly, Mr. Cahall advanced his theory that all of TDD's claims were invalid because of the illegality of the contract and that the Judgment must be vacated.[5] Judge Adams issued an Amended Order on March 30, 2020 underscoring the finding that Mr. Cahall breached his employment contract with TDD and that Plaintiffs are enjoined from using the names "HMRP, Inc." and "TD HealthMed Realty Partners – Robinwood, LLC." *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al.*, Case Number 10-C-17-000401, Amended Judgment (March 30, 2020). However, Judge Adams did reduce the total damages to $347,247.19 based upon the arguments in Mr. Cavenee's Motion to Amend that the court miscalculated credits owed to Plaintiffs towards the total judgment. *Id.*

On April 22, 2020, Ms. Pieterse and Mr. Cahall each filed a notice of appeal of Judge Adams' Judgement to the Court of Special Appeals of Maryland. On August 7, 2020, Ms. Pieterse filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On March 9, 2021, Plaintiffs filed their first Adversary Proceeding against: TDD, TDD's State Court Action Counsel, and TDD's counsel who filed a Proof of Claim in Ms. Pieterse's bankruptcy proceedings. The Plaintiffs' First Adversary Proceeding was styled *Pieterse v. Tyler Donegan Duncan Real Estate Services, Inc., et al.* (*In re Pieterse*), 20 B.R. 17425 (Bankr. D. MD. 2021). On May 28, 2021, this Court issued two Orders disposing of Plaintiffs' First Adversary Proceeding in its entirety: (1) an Order Granting Motion to Dismiss Adversary Proceeding as to Defendant John C. Hanrahan for failure to state a claim upon which relief may be granted and (2) Order

---

[4] Mr. Cavenee attended the January 30, 2020 hearing solely as an observer.
[5] On the same day as the January 30, 2020, hearing, Mr. Cahall filed a Motion for Sanctions Against TDD's Counsel John M. Robinson and John H. Doud, which Judge Adams denied on February 19, 2020.

Abstaining from Exercising Jurisdiction and Dismissing Complaint. Plaintiffs now brings this legal malpractice action, renewing the arguments presented in their First Adversary Proceeding, and contending that Defendants committed legal malpractice by failing to advance legal theories that are inapposite to Maryland case law and Maryland Rules of Professional Conduct.

## Legal Standard

*A motion to dismiss under Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is intended to test the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, legal conclusions are not entitled to a presumption of truth. *Id.* at 679. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059, 378 U.S. App. D.C. 355 (D.C. Cir. 2007). A complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true…it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

*Enforcement of Choice of Law Clause*

It is well settled that parties to a contract can agree in advance to submit to the jurisdiction of a given court. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-316 (1964) In

*Gilman v. Wheat, First Securities*, 345 Md. 361, 692 A.2d 454 (1997), the Maryland Court of Appeals endorsed the view of the United States Supreme Court in determining the enforceability of forum-selection clauses holding that: (1) a forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable, but (2) a court may deny enforcement of such a clause upon a clear showing that, in the particular circumstance, enforcement would be unreasonable. *Secure Fin. Serv. v. Popular Leasing USA, Inc.*, 391 Md. 274, 283, 892 A.2d 571, 576, 2006 Md. LEXIS 70, *14-15 (citing Gilman v. Wheat, 345 Md. at 378 (1997); see Stockley v. Thomas, 89 Md. 663, 668-69, 43 A. 766, 768 (1899) (concluding that, where plaintiffs "have voluntarily abandoned the courts of this State" through a contract, there is "no good reason" why their complaint should be adjudicated by a Maryland court).

A forum-selection clause may be found to be unreasonable if the resisting party establishes: (1) it was induced by fraud or overreaching, (2) the contractually selected forum is so unfair and inconvenient as, for all practical purposes to deprive the plaintiff of a remedy or its day in court, or (3) enforcement would contravene a strong public policy of the State where the action is filed. *Secure Fin. Serv. v. Popular Leasing USA, Inc.*, 391 Md. 274, 283, 892 A.2d 571, 576, 2006 Md. LEXIS 70, *14-15.

*Proving causation in a legal malpractice case*

To prevail in a legal malpractice claim, a plaintiff must prove their "case-within-a case" and present the evidence that would have been presented in the underlying action to show that, absent the attorney's alleged negligence, they would have prevailed in the underlying litigation. *See Senez v. Carney,* No. 0223 SEPT.TERM 2013, 2016 Md. App. LEXIS 260, 2016 WL 1189129, at *8 (Md. Ct. Spec. App. Mar. 28, 2016)(citing *Suder v. Whiteford, Taylor & Preston, LLP,* 413 Md.

230, 241-242 (2010)). Here, Plaintiffs must show that they would have avoided having judgment entered against them had Defendants used the threat of criminal prosecution during settlement discussions, argued the employment contract to be illegal, and sought dismissal of TDD's trademark infringement claim based upon their lack of ownership of the trade name.

## ARGUMENT

Plaintiffs' Complaint should be dismissed for four reasons. First, the parties' Retainer Agreement contains a reasonable forum selection clause requiring that any dispute regarding the Defendants' fees or representation of Plaintiffs be solely adjudicated in Frederick County, Maryland. Second, this Court should abstain from exercising Jurisdiction and dismiss the Complaint to allow full adjudication of the Plaintiffs' appeals before the Court of Special Appeals of Maryland regarding the State Court Action. Third, Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Finally, if this Court finds that Plaintiff's Complaint still survives, then Mr. Cahall's claims must be stricken as he is a non-debtor and this Court does not have jurisdiction to hear his "non-core proceedings."

### I.     Frederick County, Maryland is the Only Proper Venue Pursuit to the Forum Selection Clause in the Parties' Retainer Agreement

Parties to a contract, such as a Retainer Agreement, are permitted to agree in advance to submit to the jurisdiction of a given court. *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-316 (1964); *Gilman v. Wheat, First Securities*, 345 Md. 361, 692 A.2d 454 (1997). A forum-selection clause is presumptively valid and enforceable and the party resisting it has the burden of demonstrating that it is unreasonable. *Secure Fin. Serv. v. Popular Leasing USA, Inc.*, 391 Md. 274, 283, 892 A.2d 571, 576, 2006 Md. LEXIS 70, *14-15 (citing *Gilman v. Wheat*, 345 Md. at 378 (1997).

A court may only deny enforcement of such a clause upon a clear showing from the

resisting party that, in the particular circumstance, enforcement would be unreasonable because: (1) it was induced by fraud or overreaching, (2) the contractually selected forum is so unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or its day in court, or (3) enforcement would contravene a strong public policy of the State where the action is filed. *Secure Fin. Serv. v. Popular Leasing USA, Inc*., 391 Md. 274, 283, 892 A.2d 571, 576, 2006 Md. LEXIS 70, *14-15.

As established by Plaintiffs in their Complaint, the Plaintiffs executed a Retainer Agreement with Defendants retaining them to represent Plaintiffs in the State Court Action filed in the Circuit Court for Frederick County, Maryland. Pls' Ex. A. In executing the Retainer Agreement, Plaintiffs agreed to the following:

> **In any dispute over the payment of the Firm's fees, or G&S's representation of you in this matter,** you agree to submit to the personal jurisdiction of the Maryland state courts and further agree that the jurisdiction and venue for any such dispute shall be proper in Frederick County, Maryland.

Pls' Ex. A at 3, ¶ 8 (emphasis added). All of Plaintiffs' claims are rooted in Defendants' representation of them in the underlying State Court Action and the attorney's fees assessed as a result. Therefore, Plaintiffs' Complaint must be dismissed as this Court is the improper venue for Plaintiffs' claims based upon the parties' enforceable forum selection clause.

## II. Plaintiffs' Complaint Requires this Court to Make a Legal Determination on the Sufficiency of Plaintiffs' Pending Appeals

Plaintiffs' First Adversary Proceeding as well as the instant Complaint both seek to invalidate a valid judgment entered by Judge Adams after protracted litigation between Plaintiffs and TDD in Circuit Court of Frederick County. Defendants acknowledge that their role and interests in the State Court Action certainly differs from that of TDD and the other defendants named in the First Adversary Proceeding. However, both sets of Plaintiffs' claims ask this Court

to ultimately make the same decision – that the employment contract between Mr. Cahall and TDD was illegal and void *ab initio.* As outlined in this Court's May 28, 2021 Opinion, "[c]onsideration of the *Railworks* factors weighs strongly in favor of this Court abstaining form exercising jurisdiction over this matter." *Pieterse v. Tyler Donegan Duncan Real Estate Services, Inc., et al.* (In re Pieterse), 20 B.R. 17425 at 10 (Bankr. D. MD. 2021)(Chavez-Ruark, J.)(citing *In re Railworks Corp.*, 345 B.R. at 540, n.6.). Specifically, this Court's held in its May 28, 2021 Opinion that it:

> will not attempt to determine the validity and enforceability of another court's judgment, especially when the other court's judgment is based on a lengthy trial and protracted litigation. For good reason, that review should be undertaken by the court that issued the judgment and those courts vested with appellate jurisdiction over such judgments.

*Pieterse v. Tyler Donegan Duncan Real Estate Services, Inc., et al.* (In re Pieterse), 20 B.R. 17425 at 10 (Bankr. D. MD. 2021)(Chavez-Ruark, J.). The success of Plaintiffs' claims all rest on the argument that Defendants committed legal malpractice in their representation of Plaintiffs and but for that negligence judgment would not have been entered against them. Therefore, despite the different interests of the First Adversary Proceeding defendants and the instant Defendants, this Court will again be required to determine the validity and enforceability of another court's judgment in addressing the Plaintiffs' claims.

As a result, this should Court abstain from exercising further jurisdiction over the claims asserted in this proceeding and dismiss Plaintiffs' Complaint. Further, Defendants request that the Court retain jurisdiction with respect to the allowance or disallowance of claims the Defendants may have in Ms. Pieterse's bankruptcy case upon the final resolution of Plaintiffs' appeals and/or any other proceedings commenced or continued in the State Court, the Court of Special Appeals and/or the Court of Appeals of Maryland consistent with the terms of the Court. *Pieterse v. Tyler*

*Donegan Duncan Real Estate Services, Inc., et al.* (In re Pieterse), 20 B.R. 17425 at 16 (Bankr. D. MD. 2021)(Chavez-Ruark, J.).

### III.  Plaintiffs' Counts Fail to State a Claim for Relief

Plaintiffs alleges that their former attorneys committed legal malpractice by refusing to pursue three legal strategies: (1) threatening criminal prosecution during settlement negotiations, (2) arguing that the employment contract was illegal and therefore void *ab initio,* and (3) arguing that the Plaintiff's former business partners should be precluded from bringing a trademark infringement claim on a trademark they did not own.  The success of Plaintiffs' claims all rest on the argument that Defendants committed legal malpractice in their representation of Plaintiffs and, but for that negligence, judgment would not have been entered against them.

#### A.  *Threatening Criminal Prosecution During Settlement Negotiations with TDD*

Plaintiffs contend that Defendants were negligent by failing to threaten criminal prosecution of TDD during their settlement discussions. Mr. Cahall felt that the smoking gun was Mr. Tyler's deposition where he testified that he knew Mr. Cahall did not hold a brokerage license but completed brokerage work for TDD during his employment, albeit with another broker, Joseph Donegan.

The purpose of settlement negotiations is to engage in good faith discussion with an opposing party to avoid costly litigation and settle outstanding claims. Instead, Mr. Cahall attempted to create more litigation and insisted on four different occasions that Mr. Cavenee engage in settlement discussions with TDD with the goal to threaten to report TDD for criminal prosecution for TDD's payment to Mr. Cahall for allegedly completing brokerage work he was unlicensed to complete. As Mr. Cavenee responded to every such request – doing so would be in violation of the Maryland Rules of Professional Conduct. For example, Rule 3.1(a) requires that

an attorney "has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure." Therefore, Mr. Cavenee's ethical decision to not use TDD's alleged criminal misconduct to leverage a settlement agreement was appropriate and reasonable.

### B. Arguing that the Employment Contract was Illegal and Therefore Void ab initio.

In response to TDD's breach of contract claim Mr. Cahall filed his own breach of contract claim insisting that he was owed additional compensation under the parties' employment contract. Defendants advanced this theory on behalf of Mr. Cahall all the way through to trial. Judge Adams ultimately determined that there was an implied employed contract between the parties as a result of the interactions between them over the course of several years. Specifically, she found that under Mr. Cahall's employment with TDD "his duties were to seek out business opportunities for which he was compensated by TDD." *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al.*, Case Number 10-C-17-000401, Opinion and Order at 10 (July 9, 2019). Judge Adams then went on to outline Mr. Cahall's responsibilities subject to the implied employment contract to include overseeing day-to-day operations, general supervision of on-site operations, and drafting property management agreements. *Id.* at 11. Even after Mr. Cahall articulated his theory of the employment contract being illegal at the January 30, 2020 post-judgment hearing, Judge Adams still underscored her finding of a valid implied employment contract between Mr. Cahall and TDD in her Amended Judgment.

The theory that the employment contract was illegal and void *ab initio* directly contradicted Mr. Cahall's counterclaim for breach of contract, pursuant to which he contended that he was still owed damages in relation to his compensation. Simply put – the two theories cannot coexist. Further, as the evidence at trial reflected, the duties of Mr. Cahall in his work with TDD were not that of a broker. Even so, he worked with a licensed broker, Joseph Donegan. Notably, Judge

14

Adams intentionally included these facts in her Opinion and clearly considered them in determining the validity of the employment contract. Therefore, Mr. Cavenee's sound decision to not advance the theory that the employment contract was illegal was consistent with the facts, consistent with the Defendants' overall legal strategy, and consistent with Maryland state law.

### C. Arguing that TDD Should be Precluded from Bringing a Trademark Infringement Claim on a Trademark They Did Not Own.

Under Md. Business Regulation Code Ann. §§ 1-401, et seq., which preserves the enforceability of common-law trade or service marks, common-law trademarks are protected even if not registered under the necessary statutes. Section 1-402, "Effect of Subtitle," specifically provides that "this subtitle does not affect adversely a right or the enforcement of a right in a mark acquired in good faith at any time at common law." Equally, the Maryland Attorney General has noted: "State trademark registration laws patterned after the Model State Bill have been adopted with some variations in 46 jurisdictions. In Maryland, as elsewhere, it is evident that such laws do not abridge the common law but, rather, simply affirm it." 67 Op. Att'y Gen. 380, 382 (1982).

In response to Mr. Cahall's very first request that Defendants move to dismiss TDD's trademark infringement claim, Mr. Cavenee advised Mr. Cahall that in his knowledge and experience in trademark litigation TDD did have a valid claim to protect their trademark under common law regardless of ownership of the trade name – a legal conclusion echoed by Judge Adams in her Judgment as well as her Amended Judgment. Notably, Judge Adams held, consistent with Maryland case law, that "[a]lthough the Business Regulation Articles of the Code addresses the usage of trade names and preserves their enforceability, the common law also protects them even if not registered." *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al.*, Case Number 10-C-17-000401, Opinion and Order at 20 (July 9, 2019) (citing *Sea Watch Stores Ltd. Liab. Co. v. Council of Unit Owners of Sea Watch Condo.*, 115 Md. App. 5, 45, 691

A.2d 750, 769, 1997 Md. App. LEXIS 63, *62-63.)

Therefore, the advancement of any theory that TDD lacked standing to bring a trademark infringement claim based upon their lack of ownership of the trade name "HealthMed Realty Partners" would have been futile and not a breach of Defendants' duty to Plaintiffs.

### IV. Counts IV and V Both Fail to Include Any Facts that Support its Claims

Plaintiffs' Count IV is a dispute as to the amount of fees charged by Defendants in their representation of Plaintiffs in the State Court Action. As to Count IV, Plaintiffs' Complaint offers nothing more than conclusory allegations regarding the fees assessed by Defendants and does not establish that Plaintiffs can prove "any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Indeed, Plaintiffs' Complaint qualifies the allegations set out in Count IV as lacking any substantive facts when they state "Plaintiffs **believe** the bills were significantly 'padded' with work that was not necessary or completed and work that could not have taken as long as the hours billed[.]" Compl. at ¶ 63 (emphasis added). Therefore, Plaintiffs' Count IV must be dismissed for failure to state a claim for relief.

Further, Count V of Plaintiffs' Compliant improperly asserts "Wrongful Attempt to Collect a Debt not Owed" as a cause of action. Count V appears to only be asserted by Ms. Pieterse, who contends that Defendants have assessed less than $300,000 in total attorney's fees, "over $150,000 in attorneys fees, much more than her proportionate share." Compl. at ¶ 64. Ms. Pieterse asserts that the Proof of Claim filed by Defendant Gordon & Simmons in response to her Bankruptcy Petition is inappropriate as she never agreed to be jointly and severally responsible for the other defendants to the State Court Action. Compl. at ¶ 65. Notably, the only two signatories to the Retainer Agreement were Ms. Pieterse and Mr. Cahall, who also signed on behalf of HMRP, Inc.

and TD HealthMed Realty Partners – Robinwood, LLC. The Retainer Agreement specified the terms of Defendants' representation "of you and your businesses in this action" to include the attorney's hourly rate, billing time incriminates, invoice payment deadlines, etc. Pls' Ex. A at 1. The final page of the Retainer Agreement asks that the Plaintiffs contact Defendants with any questions or concerns before executing their signatures and entering into the terms of the Retainer Agreement. Pls' Ex. A at 3. Plaintiffs never made any such inquiry to Defendants relating to individual billing, billing to all parties collectively, or any other terms of the Retainer Agreement.

Count V of the Complaint is not properly pleaded as an independent cause of action. Instead, the proper mechanism by which Ms. Pieterse can dispute Defendants' proof of claim is through an objection as governed by Bankruptcy Rule 3007 titled "Objections to Claims." Furthermore, the parties' Retainer Agreement speaks for itself and despite Ms. Pieterse's preference to modify the payment of costs associated with Defendants' representation, Plaintiff has not alleged any facts that Defendants are not entitled to file a Proof of Claim.

### V.  Mr. Cahall is Not a Debtor and His Claims Are "Non-Core Proceedings" and Not Within The Jurisdiction of This Court

Finally, all claims associated with Mr. Cahall must be dismissed as he is a non-debtor and brings forth a non-core proceeding. Under 28 U.S.C.S. § 157 the U.S. Bankruptcy Courts have jurisdiction to hear "core proceedings," but they largely lack authority to determine "non-core proceedings." Core proceedings are those matters necessarily related to a bankruptcy case that affect the restructuring of debtor-creditor relations and the liquidation of estate assets. *Edgcomb Metals Co. v. Eastmet Corp.*, 89 B.R. 546, 548 (D.Md.1988). Non-core proceedings are "Marathon type" suits, that is, claims "concerned only with state law issues that [do] not arise in the core bankruptcy function of adjusting debtor-creditor rights." *Id*. (citing 130 Cong. Rec. H-1848 (daily ed. March 21, 1984)).

Mr. Cahall's claim is a classic example of the "Marathon type suits" described in *Edgcomb*, as his claims are solely concerned with Maryland state law issues and not those associated with core Bankruptcy functions. If Mr. Cahall's claims were to be litigated before this Court, the result would not impact the administration of Ms. Pieterse's bankruptcy Petition. Therefore, this Court lacks the jurisdiction to preside over Mr. Cahall's claims and all should be dismissed.

## CONCLUSION

Plaintiffs' Complaint should be dismissed on multiple grounds. The parties' Retainer Agreement includes a reasonable forum selection clause requiring that any dispute regarding the Defendants' fees or representation of Plaintiffs be solely adjudicated in Frederick County, Maryland not Bankruptcy court. Further, this Court should act consistent with its previous holding in the First Adversary Proceeding by abstaining from exercising Jurisdiction and dismissing the Complaint to allow full adjudication of the Plaintiffs' appeals before the Court of Special Appeals of Maryland regarding the State Court Action. Defendants acted reasonably and consistent with the Rules of Professional Conduct and State Law in refusing to advance Mr. Cahall's inconsistent and unethical legal theories. As a result, all five counts of Plaintiffs' Complaint fail to state a claim upon which relief can be granted. Finally, Mr. Cahall is a non-debtor, bringing a non-core proceeding before this Court relating to state law, and therefore his claims must be stricken. Consequently, Defendants request the Court dismiss Plaintiffs' Complaint in its entirety.

>GORDON & SIMMONS, LLC, SHAWN P. CAVENEE, ESQ., JACOB I. WEDDLE, ESQ., CHARLES E. REMUS, II, ESQ., and BENJAMIN J. ANDRES, ESQ.
>By Counsel
>
>/s/ *Savannah McDonald*
>Dennis J. Quinn, Bar No. 16894
>Savannah McDonald, Bar No. 22073
>Carr Maloney P.C.
>2000 Pennsylvania Avenue, NW Suite 8001
>Washington, D.C. 20006
>(202) 310-5500 (Telephone)
>(202) 310-5555 (Facsimile)
>Dennis.Quinn@carrmaloney.com
>Savannah.mcdonald@carrmaloney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss was e-filed and served via first class mail on this 20th day of January 2022 to:

>Jacqueline J. Pieterse
>8751 Pete Wiles Road
>Middletown, MD 21769
>jgoldsmd@comcast.net
>*Plaintiff*
>
>Jeffery M. Cahall
>8751 Pete Wiles Road
>Middletown, MD 21769
>Cahall_titan@hotmail.com
>*Plaintiff*
>
>  */s/ Savannah McDonald*
>Savannah McDonald

19